1  Kevin R. McLean, CSB 127209
   Law Offices of Belli & McLean
2  473 Jackson Street, Second Floor
   San Francisco, CA 94111
3  Telephone: (415) 981-0100
   Facsimile: (415) 981-2050
4
   Plaintiff in Pro Per
5  Kevin R. McLean

**FILED**

NOV - 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

6

7              In The United States District Court

8              In and For the Northern Court of California

9                          [San Francisco]

**TEH**

10

11  KEVIN R. McLEAN,                    Case No.

12            Plaintiff,                **CV 07          5594**

13  v.                                  COMPLAINT FOR DAMAGES AND
                                        EQUITABLE RELIEF FOR:
14  WORLD SAVINGS FSB; INTEGRITY
    INVESTMENT GROUP, LLC;              1. TO SET ASIDE NON-JUDICIAL
15                                      FORECLOSURE SALE DUE TO
    GOLDEN WEST SAVINGS                 FRAUD
16  ASSOCIATION SERVICE CO; SUSAN       2. DECLARATORY RELIEF
    FEDERIGHI; BILL FORD; JEFFERY       3. QUIET TITLE
17                                      4. WRONGFUL EVICTION
    FORD; CALIFORNIA FRANCHISE
18  TAX BOARD; WILLIAM L. VEEN,         DEMAND FOR JURY TRIAL

19
            Defendants.
20

21

22      Plaintiff, KEVIN R. McLEAN, ("McLean") hereby brings this Complaint

23  against DEFENDANTS INTEGRITY INVESTMENT GROUP, LLC; WORLD

24  SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO;

25  SUSAN FEDERIGHI; BILL FORD; JEFFERY FORD; CALIFORNIA

26  FRANCHISE TAX BOARD; WILLIAM L. VEEN and alleges as follows:

27  ///

28



**THE PARTIES**

1.     PLAINTIFF, Kevin R. M$^c$Lean at all relevant times was a resident of San Mateo County.  PLAINTIFF has owned the property at 481 West Maple Way, since January 1991.  The property which is the subject of this lawsuit is located in San Mateo County.  A true and correct copy of the deed and trust that was unlawfully foreclosed on and recorded on November 21, 2003 is attached as Exhibit A and made a part hereof.

2.     DEFENDANT, WORLD SAVINGS FSB, ("WORLD SAVINGS") is a Texas Corporation, form unknown, doing business in the State of California and claimed beneficiary under the deed of trust.

3.  DEFENDANT, INTEGRITY INVESTMENT GROUP, LLC. ("INTEGRITY") is a California Corporation, form unknown.  This entity claims an interest in the property located at 481 West Maple Way, Woodside, CA, which is the subject of this lawsuit, by reason of the unlawful Trustee's Deed Upon Sale recorded on October 11, 2007, obtained by reason of fraud and failure beneficiary and trustee to give proper notice of the trustees non-judicial foreclosure.  A true and correct copy of the Trustee's Deed upon Sale is attached hereto as Exhibit B and is incorporated herein by reference.

4.     DEFENDANT, GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.,  ("GOLDEN WEST") a business entity, form unknown, alleged to be doing business in the State of California with its principal place of business in San Antonio, Texas, was appointed the trustee on behalf of World Savings FSB, beneficiary under the deed of trust, and was at all times to act in a fiduciary capacity, and act in good faith, and follow all terms of the deed of trust, and follow the non-judicial foreclosure procedures set forth in California civil code §2924 and with United States and California constitutional and procedural due process to the trustor.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR: 1.  TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE
TO FRAUD; 2.  DECLARATORY RELIEF; 3. QUIET TITLE; 4.  WRONGFUL EVICTION

2

5.    DEFENDANT, SUSAN FEDERIGHI, was at all relevant times a resident of Marin County California and claims an interest in the property in the subject of this lawsuit.

6.    DEFENDANT, BILL FORD, was at all relevant times a resident of City and County of San Francisco California and claims an interest in the property in the subject of this lawsuit

7.    DEFENDANT, JEFFERY FORD, was at all relevant times a resident of Marin County California and claims an interest in the property in the subject of this lawsuit.

8.    DEFENDANT, CALIFORNIA FRANCHISE TAX BOARD, is a Government entity claiming an interest in the property in the subject of this lawsuit.

9.    DEFENDANT, WILLIAM VEEN, was at all relevant times a resident of the City and County of San Francisco California and claims an interest in the property in the subject of this lawsuit by reason of judgment lien recorded against said property and unlawfully foreclosed on by "WORLD SAVINGS" and "GOLDEN WEST SAVINGS."

## JURISDICTION AND VENUE

10.    Jurisdiction is based upon diversity in that Defendant World Savings FSB is a foreign Texas Corporation doing business in the State of California.  The deed of trust, which is the subject of this lawsuit also specifies Federal Court jurisdiction in its terms.  See Exhibit "A", paragraph "15."Pursuant to pendant jurisdiction this Court has jurisdiction over the state law claims alleged in this Complaint.

11.    Venue is proper as the Property which is the subject of his lawsuit lies within this Courts jurisdiction in San Mateo County, California.

///

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR: 1.  TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE TO FRAUD; 2.  DECLARATORY RELIEF; 3. QUIET TITLE; 4.  WRONGFUL EVICTION

3

# FACTUAL BACKGROUND

12.    In November 2003, PLAINTIFF, KEVIN R. McLEAN, trustor, entered into a mortgage agreement with World Savings FSB concerning Plaintiffs' longtime residence at 481 West Maple Way, Woodside California. See Exhibit "A" attached hereto and incorporated herein by this reference.

13.    At all relevant times Plaintiff Kevin R. McLean complied with the terms and agreements of said mortgage with Defendant World Savings FSB.

14.    On April 25, 2007, Defendant World Savings FSB, through its agent Golden West Savings Association Service Co., trustee, filed a notice of default and election to sell, and a notice of sale a true and correct copy of which is attached as Exhibit D and incorporated by this reference.

15.    On May 15, 2007, Plaintiff Kevin R. McLean, filed a petition for Bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code. This filing triggered an automatic stay of the trustee sale of the property which is the subject of this lawsuit, which was subsequently dismissed without prejudice on August 24, 2007.

16.    On April 25, 2005, "GOLDEN WEST" recorded a notice of Trustee's Sale against the subject property, which was stayed by Plaintiff McLean's bankruptcy proceeding. A true and correct copy is attached hereto as Exhibit C and made a part hereof.

17.    On October 3, 2007, Defendant WORLD SAVINGS FSB, beneficiary, through its trustee, Golden West Savings Association Service Co., unlawfully foreclosed against the subject property by holding an unlawful trustee sale on the Courthouse steps of the Redwood City Courthouse without giving any notice to Plaintiff or anyone else claiming to have an interest in this property which is the basis of this lawsuit.

18.    Plaintiff, Kevin R. McLean alleges that Defendants Integrity Investment Group, LLC, World Savings FSB, Golden West Savings Association

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR: 1. TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE TO FRAUD; 2. DECLARATORY RELIEF; 3. QUIET TITLE; 4. WRONGFUL EVICTION

4

Service Co., entered into an agreement to defraud Plaintiff and all others claiming an interest in this property, without following the requirements of California civil code §2924.

## FIRST CAUSE OF ACTION

(To Set Aside Non-Judicial Foreclosure Sale Due To Fraud Against Defendants: INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.)

19.    Plaintiff hereby incorporates by reference paragraphs 1-18 as if stated fully herein.

20.    Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., entered into an agreement to buy Plaintiff's/Trustor's property by holding an illegal trustee sale of said property without giving proper notice to Plaintiff and all others claiming interest in such property as required by law.

21.    Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., acted to carry out this scheme by claiming to hold a valid trustee sale on October 3, 2007 in Redwood City, California.  In reality this alleged sale was a sham as no affective and or legal notice was given by Defendants prior to the unlawful sale of October 3, 2007.

22.    As a result of Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO, failure to give the required notice of such sale to comply with Plaintiff's due process rights, Plaintiff, Kevin R. M$^{c}$Lean, trustor, has suffered damages in excess of the jurisdictional minimum limit of this Court to be proven at trial.  Said damages include:  loss of equity in the subject property, loss of use of the subject property, in the amount in excess of $750,000.00 according to proof, unlawful wrongful eviction, emotional distress, and further relief to be determined by this Court.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:  1.  TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE TO FRAUD; 2.  DECLARATORY RELIEF; 3. QUIET TITLE; 4.  WRONGFUL EVICTION

5

23.    The conduct of said Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., was fraudulent, malicious, oppressive, and done in conscious disregard of Plaintiffs rights, thereby exposing these Defendants to punitive damages.

## SECOND CAUSE OF ACTION
(For Declaratory Relief Against Defendants:  INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.; SUSAN FEDERIGHI; BILL FORD; JEFFERY FORD; CALIFORNIA FRANCHISE TAX BOARD; WILLIAM VEEN)

24.    Plaintiff hereby incorporates by reference paragraphs 1-22 as if stated fully herein.

25.    PLAINTIFF, KEVIN R. McLEAN, trustor, at all times herein mentioned is the owner and/or entitled to possession of the property located at 481 West Maple Way, Woodside, California, San Mateo County.

26.    Plaintiff Kevin R. McLean is informed and believes and thereupon alleges that INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.; SUSAN FEDERIGHI; BILL FORD; JEFFERY FORD; CALIFORNIA FRANCHISE TAX BOARD; WILLIAM VEEN, and each of them, claim an interest in the property adverse to the Plaintiff herein.  However, the claim of said Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in said property, except to the extent of their perfected liens or disputed judgment liens.

27.    Plaintiff Kevin R. McLean therefore seek a declaration that the title to the subject property is vested in Plaintiff alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the subject property and that said Defendant and each of them, be forever enjoined from asserting any estate, right, title, or interest in the subject property adverse to

Plaintiff herein, except to the extent of their perfected liens or disputed judgment liens.

## THIRD CAUSE OF ACTION

(For Quiet Title Against Defendants: INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.; SUSAN FEDERIGHI; BILL FORD; JEFFERY FORD; CALIFORNIA FRANCHISE TAX BOARD; WILLIAM VEEN)

28.    Plaintiff hereby incorporates by reference paragraphs 1-26 as if stated fully herein.

29.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties in that Plaintiff contends he owns the property which is the subject of this lawsuit, whereas Defendant disputes these contentions and contends that Plaintiff does not have any interest in the property which is the subject of this lawsuit.

30.    A judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain rights and duties.

31.    As a result of Defendants, and each of them, failure to give the required notice of such sale to comply with Plaintiff's due process rights, Plaintiff, Kevin R. McLean has suffered damages in excess of the jurisdictional minimum limit of this Court to be proven at trial. Said damages include: loss of equity in the subject property, loss of use of the subject property ($2.4 million), and further relief to be determined by this Court.

## FOURTH CAUSE OF ACTION

(For Wrongful Eviction: INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO.)

32.    Plaintiff hereby incorporates by reference paragraphs 1-31 as if stated fully herein.

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR: 1. TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE TO FRAUD; 2. DECLARATORY RELIEF; 3. QUIET TITLE; 4. WRONGFUL EVICTION

7

33.    On or about October 14, 2007, Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., caused a notice to quit to be attached to Plaintiff's front door to the property which is the subject of this lawsuit. Said notice is attached as Exhibit E and made a part hereof.

34.    On or about October 22, 2007, Plaintiff received a notice from the San Mateo County Superior Court Clerk that Defendants had filed an unlawful retainer action against Plaintiff attempting to evict him from the property which is the subject of this lawsuit. A true and correct copy of said document is attached hereto as Exhibit F and made a part hereof.

35.    Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., has commited an abuse of process by unlawfully attempting to evict Plaintiff McLean from his property based upon the fraudulent, and unlawful trustees non-judicial foreclosure sale of October 3, 2007, which was accomplished by violating the due process rights of Plaintiff and others through the complete failure to give notice and now attempting to wrongfully evict him for his property.

36.    Such attempts at depriving Plaintiff of his property has caused Plaintiff to suffer damages including: loss of equity, loss of use of the property, $2.4 million, attorney's fees, and cost of lawsuit, and further relief as determined by this Court. Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO. conduct is fraudulent, malicious, and oppressive and done in conscious disregard of Plaintiff's rights thereby exposing these Defendants to punitive damages to be proven at trial.

WHEREFORE, PLAINTIFF, KEVIN R. McLEAN, pray judgment against Defendants INTEGRITY INVESTMENT GROUP, LLC; WORLD SAVINGS

FSB; GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., and each of them as follows:

    A.    For general damages according to proof;

    B.    For special damages according to proof;

    C.    For a declaration that 481 West Maple Way, Woodside, CA   94062 belongs as the sole and separate property to Plaintiff Kevin R. McLean and for quiet title;

    D.    That the Court determine that Defendants have committed wrongful eviction by reason of their unlawful retainer action;

    E.    For punitive damages;

    F.    For attorneys' fees and costs; and

    G.    For such other and further relief that this Court deems proper.

Dated:  November 2, 2007

BY: _____

KEVIN R. McLEAN
In Pro Per

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR:  1.  TO SET ASIDE NON-JUDICIAL FORECLOSURE SALE DUE TO FRAUD; 2.  DECLARATORY RELIEF; 3. QUIET TITLE; 4.  WRONGFUL EVICTION

9

# EXHIBIT A

**RECORDING REQUESTED BY:**
**ALLIANCE TITLE COMPANY**

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Escrow 111893342-263-SM3

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78285-9548

LOAN NUMBER: 0021893688

NOTE AMOUNT: $500,000.00



2003-330278
02:09pm 11/21/03 DT Fee: 55.00
Count of pages 17
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

*2003330278AR*

FOR RECORDER'S USE ONLY

DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $625,000.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

I.   DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
     (A)   Security Instrument. This Deed of Trust, which is dated OCTOBER 17, 2003 " * " * " will be called the "Security Instrument."

     (B)   Borrower. KEVIN R. MCLEAN, AN UNMARRIED MAN

sometimes will be called "Borrower" and sometimes simply "I" or "me."

     (C)   Lender. WORLD SAVINGS BANK, FSB, " * " * " * " * " * " * " * " * " * " * " * " * " * " * " * " * " * " ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is A FEDERAL SAVINGS BANK " * " * " * " * " * " which is organized and exists under the laws of the United States. Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612.

SD001A (05.22.02)(4-02) A01A            Page 1            CA
                          DEED OF TRUST-ADJUSTABLE

*0003*

LENDER'S USE ONLY

0021833686

(D)    Note. The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$500,000.00** " " ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in monthly payments and to pay the debt in full by **NOVEMBER 15, 2033.**

(E)    Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F)    Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G)    Person. Any person, organization, governmental authority or other party will be called "Person."

(H)    Trustor, Beneficiary, Trustee. Borrower is the "Trustor," Lender is the "Beneficiary" and **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION** " " " " " " " is the "Trustee.

## II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)  keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i)    The property which is located at **481 WEST MAPLE WAY, WOODSIDE, CA 94062.** " " " " " " " " " " " " " " " " " " " " The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

0021833686

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.    BORROWER'S PROMISE TO PAY
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.    PAYMENTS FOR TAXES AND INSURANCE
(A)    Borrower's Obligations
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (03.22.02/4-03) A01D    DEED OF TRUST-ADJUSTABLE    CA
Page 3

0021899888

(B)    Escrow Accounts

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

0021833686

### 3.    APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

### 4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

### 5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

0021833686

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

0021833686

6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may, without limitation, include appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other government taking of the property. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

**0021833686**

only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my monthly payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
      (A)   Borrower's Obligations
            Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

            Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

      (B)   Lender's Rights
            Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument.

11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
            Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

            Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

            Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

SD001H (03.22.02/4-02) A011          DEED OF TRUST-ADJUSTABLE                              CA
REV. (08.01.03/1-03)                          Page 8

0021833686

In this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **481 WEST MAPLE WAY, WOODSIDE, CA 94062.** * * * * * * * * * * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section 1(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions, ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

0021833686

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS
An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts. I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment.

19.    CLERICAL ERRORS
In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.    LOST, STOLEN OR MUTILATED DOCUMENTS
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.    WAIVER OF STATUTE OF LIMITATIONS
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.    CAPTIONS
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

23.    MODIFICATION
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

0021833686

## 24.    CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)    If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)    The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)    If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the monthly payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

0021833686

25.   FUTURE ADVANCES
      At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

      **Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

      If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

      **Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

      (i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

      (ii)  Lender approves the creditworthiness of the transferee in writing;

      (iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

      (iv)  an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

      (v)   the transferee executes an assumption agreement which is satisfactory to Lender.

      The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27.   SUBSTITUTION OF TRUSTEE
      I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

0021883686

## 28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may take action to have the Property sold under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to, attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

## 29. RECONVEYANCE

Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

## 30. STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (03.22.02/4-02) A01N                    DEED OF TRUST-ADJUSTABLE                    CA
                                                      Page 13

0021833686

**21.** ( ) **QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.** ( X ) **OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

0021833686

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
KEVIN R. MCLEAN

*Akia Kevin Mclean*

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of    California

County of    San Mateo

On    10-21 -03    before me,    Susie Butterfield
        DATE                                    NAME, TITLE OF OFFICER

personally appeared:    Kevin McLean
                                    NAME(S) OF SIGNER(S)

☐ Personally known to me  OR ☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> SUSIE BUTTERFIELD
> COMM. # 1323404
> NOTARY PUBLIC-CALIFORNIA
> SAN MATEO COUNTY
> COMM. EXP. OCT. 31, 2005

WITNESS my hand and official seal

Susie Butterfield
                                    SIGNATURE OF NOTARY

---

### OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

| CAPACITY CLAIMED BY SIGNED | DESCRIPTION OF ATTACHED DOCUMENT |
|---|---|
| ☐ INDIVIDUAL | |
| ☐ CORPORATE OFFICER | TITLE OR TYPE OF DOCUMENT |
| TITLE(S) | |
| ☐ PARTNER(S)  ☐ LIMITED | |
| ☐ GENERAL | NUMBER OF PAGES |
| ☐ ATTORNEY-IN-FACT | |
| ☐ TRUSTEE(S) | DATE OF DOCUMENT |
| ☐ GUARDIAN/CONSERVATOR | |
| ☐ OTHER: | |
| | SIGNER(S) OTHER THAN NAMED ABOVE |
| SIGNER IS REPRESENTING: | |

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO. _____ 0021833686 _____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN MATEO
STATE OF CALIFORNIA * * * * * , DESCRIBED AS FOLLOWS:

Commencing at a point in the westerly line of West Maple Way, which bears North 83° 31' West
50 feet and South 6° 29' West 33.30 feet from the northwest corner of Lot 20 in Block 206, as
shown on the Map entitled "Estates of Emerald Lake Subdivision Two" which Map was filed in the
Office of the Recorder of San Mateo County, State of California on August 1, 1927 in Book 16 of
Maps at Pages 18, 19, 20 and 21; thence northerly along said westerly line of West Maple Way,
North 6° 29' East 33.30 feet to the point on a curve to the right, having a radius of 237.03 feet;
thence along said curve, 88.39 feet to its end; thence North 27° 51' East 19.00 feet; thence
leaving said westerly line of West Maple Way, North 61° 46' 30" West 337.63 feet to an angle
point in the northwesterly line of that certain parcel of land described in the Agreement from
Lenoit Securities Corporation, a Corporation, to Agnes Mary Mahon, dated September 3, 1935
and recorded September 4, 1935 in Book 660 of Official Records of San Mateo County at Page
43, being also the southeasterly line of that certain parcel of land described in the Agreement of
sale between Lenoit Securities Corporation, a Corporation, and John J. Harper, dated June 4,
1937 and recorded August 25, 1937 in Book 769 of Official Records of San Mateo County at
Page 280; thence along the dividing line of the lands described in said Agreement, South 9° 42'
West 79.01 feet and South 16° 28' 30" West 60.00 feet; thence leaving said dividing line South
61° 20' 15" East 329.64 feet to the westerly line of West Maple Way and the point of
commencement.

# EXHIBIT B

RECORDING REQUESTED BY:

AND WHEN RECORDED MAIL TO:
GLENN GUILLORY
975 YGNACIO VALLEY ROAD
WALNUT CREEK, CA 94596

Forward Tax Statements to
the address given above

2007-148548
02:17pm 10/11/07 TD Fee: 13.00
Count of pages 3 WD
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

* 2 0 0 7 0 1 4 8 5 4 8 A R *

SPACE ABOVE LINE FOR RECORDER'S USE

TS #: 2006-21833686-A                          Order #: 3143151
Loan #: 0021833686                             Investor #:

## TRUSTEE'S DEED UPON SALE

A.P.N.: 068-110-130-9                   Transfer Tax: $650.65

The Grantee Herein Was Not The Foreclosing Beneficiary.
The Amount Of The Unpaid Debt was $591,131.69
The Amount Paid By The Grantee Was $591,300.00
Said Property Is In The City of WOODSIDE, County of San Mateo

**GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION**, as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

## INTEGRITY INVESTMENT GROUP, LLC

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **San Mateo**, State of California, described as follows:

**See exhibit "A" attached hereto and made a part hereof**

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **KEVIN R. MCLEAN, AN UNMARRIED MAN** as Trustor, dated 10/17/2003 of the Official Records in the office of the Recorder of San Mateo, California under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed Trustee, default having occurred under the Deed
of Trust pursuant to the Notice of Default and Election to Sell under the Deed of Trust recorded on 11/21/2003, instrument number 2003-330278, Book , Page of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b.

# TRUSTEE'S DEED UPON SALE

TS #: 2006-21833686-A
. Loan #: 0021833686
Order #: 3143151

All requirements per California Statutes regarding the mailing, personal delivery and publication of copies of Notice of Default and Election to Sell under Deed of Trust and Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with.  Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 10/3/2007.  Grantee, being the highest bidder at said sale became the purchaser of said property for the amount bid, being  $591,200.00, in lawful money of the United States, in pro per, receipt thereof is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws.

. Date: 10/3/2007

                                        GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A
                                        CALIFORNIA CORPORATION

                                  By:   _____
                                        SETH WHITE, ASSISTANT SECRETARY

State of Texas    } ss.
County of Bexar  }
On 10/10/2007 before me, PATTY A. ALLEN  the undersigned Notary Public, personally appeared SETH WHITE, ASSISTANT SECRETARY personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____ (Seal)
          PATTY A ALLEN

PATTY A. ALLEN
MY COMMISSION EXPIRES
May 29, 2011

WORLD SAVINGS BANK, FSB

# E X H I B I T   "A"
## LEGAL DESCRIPTION

LOAN NO. _____ 0021838686 _____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF   SAN MATEO
STATE OF   CALIFORNIA  *  *  *  *  * , DESCRIBED AS FOLLOWS:

Commencing at a point in the westerly line of West Maple Way, which bears North 83° 31' West
50 feet and South 6° 29' West 33.30 feet from the northwest corner of Lot 20 in Block 209, as
shown on the Map entitled "Estates of Emerald Lake Subdivision Two" which Map was filed in the
Office of the Recorder of San Mateo County, State of California on August 1, 1927 in Book 16 of
Maps at Pages 18, 19, 20 and 21, thence northerly along said westerly line of West Maple Way,
North 6° 29' East 33.30 feet to the point on a curve to the right, having a radius of 237.03 feet;
thence along said curve, 86.39 feet to its end; thence North 27° 51' East 19.00 feet; thence
leaving said westerly line of West Maple Way, North 61° 46' 30" West 337.63 feet to an angle
point in the northwesterly line of that certain parcel of land described in the Agreement from
Lenoit Securities Corporation, a Corporation, to Agnes Mary Mahon, dated September 3, 1935
and recorded September 4, 1935 in Book 660 of Official Records of San Mateo County at Page
43, being also the southeasterly line of that certain parcel of land described in the Agreement of
sale between Lenoit Securities Corporation, a Corporation, and John J. Harper, dated June 4,
1937 and recorded August 25, 1937 in Book 759 of Official Records of San Mateo County at
Page 260; thence along the dividing line of the lands described in said Agreement, South 9° 42'
West 79.01 feet and South 16° 25' 30" West 60.00 feet; thence leaving said dividing line South
61° 20' 15" East 329.64 feet to the westerly line of West Maple Way and the point of
commencement.

# EXHIBIT C

RECORDING REQUESTED BY
Golden West Savings Association Service Co.

AND WHEN RECORDED MAIL TO:
Golden West Savings Association Service Co.
Post Office Box 34957
San Antonio, Texas 78265-4957

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No. 2006-21833686-A
Loan No. 0021833686                                    Title Order No. 3143151

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/17/2003. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **KEVIN R. MCLEAN, AN UNMARRIED MAN**
Duly Appointed Trustee: **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION**
Recorded 11/21/2003 as Instrument No. 2003-330278 in book , page    of Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:5/16/2007 at 1:00 PM
Place of Sale:      **AT THE MARSHALL STREET ENTRANCE TO THE HALL OF JUSTICE AND RECORDS, 400 COUNTY CENTER, REDWOOD CITY, CALIFORNIA**
Amount of unpaid balance and other charges: **$565,044.50**
Street Address or other common designation of real property is     **481 WEST MAPLE WAY**
purported to be.:                                                   **WOODSIDE, CA 94062**
A.P.N.: **068-110-130-9**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

Date: April 16, 2007

Fidelity National Agency Sales & Posting
As agent for GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A
CALIFORNIA CORPORATION
15661 Red Hill Ave. Ste. 200
Tustin, California 92780

Telephone Number: (800) 840-8547
Sale Status Line: (714) 259-7850

HOLLIE DYKES, ASSISTANT SECRETARY

# EXHIBIT D

RECORDING REQUESTED BY
Golden West Savings Association Service Co.

Recording requested by.
**FIRST AMERICAN TITLE**

AND WHEN RECORDED MAIL TO:
Golden West Savings Association Service Co.
Post Office Box 34957
San Antonio, Texas 78265-4957

**2007-063607**
FIRST AMERICAN TITLE COMPANY
08:00am 04/25/07 NT  Fee; 7.00
Count of pages 1
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

SPACE ABOVE THIS LINE FOR RECORDER'S USE

T.S. No. 2006-21833686-A
Loan No. 0021833686

Title Order No. 3143151

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/17/2003. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state will be held by the duly appointed trustee as shown below, of all right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described below. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

Trustor: **KEVIN R. MCLEAN, AN UNMARRIED MAN**

Duly Appointed Trustee: **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION**
Recorded 11/21/2003 as Instrument No. 2003-330278 in book , page   of Official Records in the office of the Recorder of San Mateo County, California,
Date of Sale:5/16/2007 at 1:00 PM
Place of Sale:   **AT THE MARSHALL STREET ENTRANCE TO THE HALL OF JUSTICE AND RECORDS, 400 COUNTY CENTER, REDWOOD CITY, CALIFORNIA**
Amount of unpaid balance and other charges: **$568,044.50**
Street Address or other common designation of real property is  **481 WEST MAPLE WAY**
purported to be.:  **WOODSIDE, CA 94062**
A.P.N.: **068-110-130-9**
The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

Date: April 16, 2007

**Fidelity National Agency Sales & Posting**
As agent for **GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION**
15661 Red Hill Ave. Ste. 200
Tustin, California 92780

Telephone Number: (800) 840-8547
Sale Status Line: (714) 259-7850

HOLLIE DYKES, ASSISTANT SECRETARY

# EXHIBIT E

# NOTICE TO QUIT

TO: **KEVIN R. MCLEAN**; and all other persons possessing or occupying or claiming the right to possession of the premises described herein.  Premises to which this notice relates are commonly known as:

**481 West Maple Way**
**Woodside, California 94062**

Hereafter the property so described is referred to as "the Premises."

NOTICE IS HEREBY GIVEN that INTEGRITY INVESTMENT GROUP, LLC ("Owner") has purchased the Premises at a trustee foreclosure sale held on October 3, 2007.  Pursuant to such sale, the trustee made, executed, acknowledged and delivered to Owner a Trustee's Deed Upon Sale. Owner's title was thereafter perfected when the deed was recorded in the office of Clerk-Recorder for the County of San Mateo.

NOTICE IS HEREBY FURTHER GIVEN that before the expiration of three (3) days from the date that this Notice is served upon you, you are required to vacate the Premises, and to surrender the same to the Owner or its authorized agents. If you fail to so vacate or so surrender the Premises within the time stated, the Owner will commence legal proceedings against you for unlawful detention of the Premises, to recover possession of the Premises; for the rental value of the Premises; for damages; and costs.

The undersigned may be contacted to receive possession of the Premises.

DATED:    Oct. 12, 2007

MARK J. ROMEO
LAW OFFICES OF MARK J. ROMEO
130 Sutter Street, 7th Floor
San Francisco, CA 94104
(415) 395-9315
(415) 395-9318 fax
Attorneys for Owner

8631-01\3DAY.001

# EXHIBIT F

1   MARK J. ROMEO    SBN 112002
    LAW OFFICES OF MARK J. ROMEO
2   130 Sutter Street, 7th Floor
    San Francisco, CA 94104
3   Telephone: (415) 395-9315
    Facsimile:    (415) 395-9318
4   *romeolaw@msn.com*

5   Attorneys for Plaintiff
    INTEGRITY INVESTMENT GROUP, LLC

(ENDORSED)
**FILED**
SAN MATEO COUNTY

OCT 19 2007

Clerk of the Superior Court
By ___GRACE LACEY___
      DEPUTY CLERK

6

7

8

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN MATEO
                        Limited Civil Jurisdiction

11                                              **CLJ  195809**

12  INTEGRITY INVESTMENT GROUP, LLC )    No.
    a California limited liability company,   )
13                                            )    **COMPLAINT FOR**
                         Plaintiff,           )    **UNLAWFUL DETAINER**
14                                            )    [Demand of less than $2,500.00]
    v.                                        )
15                                            )
    KEVIN R. MCLEAN; and DOES 1 through )
16  10,                                       )
                                              )
17                       Defendants.          )
                                              )
18                                            )
                                              )
19  _____ )

    Plaintiff alleges:
20
                        **FIRST CAUSE OF ACTION**
21                          (Unlawful Detainer)

22          1.      At all relevant times, plaintiff INTEGRITY INVESTMENT GROUP, LLC

23  was a California limited liability company, with its principal place of business in Orinda, Contra

24  Costa County, California, and the owner of certain real property in the Town of Woodside, County

25  of San Mateo, California, commonly known as **481 West Maple Way, Woodside, California**

26  **94062**; and legally described in Exhibit 1 hereto. Hereafter this real property is referred to herein

27  as "the Premises."

28

8631-01\COMPLAINT.001                              COMPLAINT

1    2.  At all relevant times, defendants KEVIN R. MCLEAN and DOES 1 through

2 10 inclusively were and are individuals residing at the Premises.

3    3.  Between approximately November 21, 2003 and October 3, 2007, defendant

4 KEVIN R. MCLEAN was the owner of title to the Premises.

5    4.  Plaintiff does not know the true names or capacities, whether individual,

6 corporate, associate, or otherwise of the defendants sued herein as DOES 1 through 10, inclusive

7 and therefore sues said defendants by such fictitious names. Plaintiff prays leave to amend this

8 complaint to add the true names and capacities of said defendants when the same have been

9 ascertained, together with further appropriate charging allegations. Plaintiff is informed and

10 believes and thereon alleges that each of the defendants designated as a DOE is liable to the

11 plaintiff for the things hereinafter mentioned, as hereinafter set forth.

12    5.  On or about November 21, 2003, defendant KEVIN R. MCLEAN, borrowed

13 funds from plaintiff's predecessor in interest in the Premises, secured by a deed of trust on the

14 Premises. The deed of trust was recorded in the official records of the Office of the County

15 Recorder of the County of San Mateo, California, on November 21, 2003 as instrument No. 2003-

16 330278. By this Deed of Trust, KEVIN R. MCLEAN conveyed the Premises to the trustee of such

17 deed of trust to secure payment of the note.

18    6.  Thereafter, defendant KEVIN R. MCLEAN defaulted in the payment on the

19 note secured by the deed of trust. The trustee, at the request of the beneficiary, and in accordance

20 with section 2924 of the California Civil Code, caused to be recorded in the official records of the

21 Office of the County Recorder of the County of San Mateo, California, a Notice of Default and

22 Breach of Conditions of the Trustee and its election to sell the Premises under a power of sale

23 contained in the deed of trust to satisfy the obligations secured thereby.

24    7.  Pursuant to the terms of the Deed of Trust and Notice of Default, a Notice

25 of Trustee's Sale was duly recorded and published more than 90 days after the recording of the

26 Notice of Default. As required by section 2924 of the California Civil Code, notice was given in

27 the manner and form required by Civil Code section 2924(f) that the property would be sold at

28

1    public auction.

2            8.      On October 3, 2007, after due notice, the trustee held a trustee's sale pursuant

3    to the notices and deed of trust described above, and duly sold the property to plaintiff, who was

4    the highest bidder at the sale, and thereafter made, executed and delivered to plaintiff a Trustee's

5    Deed Upon Sale for the property which was recorded in the Official Records of the Office of the

6    County Recorder of the County of San Mateo, California on October 11, 2007. A true and correct

7    copy of the Trustee's Deed is attached hereto as Exhibit 1 and made a part hereof.

8            9.      At the time of the sale, Defendants were in possession of the property, and

9    have remained in possession after the sale.

10            10.     On October 14, 2007, plaintiff served on defendants a written notice stating

11    the plaintiff had purchased the property, that its title had been duly perfected, and demanding that

12    defendants quit the Premises within three days after service of the notice.  The notice was served

13    by posting on the Premises at about 11 a.m. on October 14, 2007, and thereafter on the same day,

14    mailing it to the Premises, as permitted by CCP § 1162, because plaintiff was unable to deliver it

15    personally to defendants and could not find a person of suitable age or discretion at the Premises

16    to whom to deliver the notice. A true and correct copy of the notice is attached hereto as Exhibit

17    2 and made a part hereof.

18            11.     The three-day period of the notice has expired, and since that date, plaintiff

19    has been and is entitled to immediate possession of the Premises.

20            12.     Defendants failed and refused to deliver up possession within the three-day

21    period, or since, and continue in possession of the Premises without plaintiff's permission or

22    consent.

23            13.     Defendants' occupation of the Premises is not subject to the local rent

24    and/or eviction control laws of any city.

25        WHEREFORE, plaintiff prays judgment as follows:

26        1.      For a judgment for possession of the Premises;

27        2.      For costs of suit herein incurred; and

28

1        3.    For such further and other relief as the court deems proper.

2    DATED: October 18, 2007          LAW OFFICES OF MARK J. ROMEO

3

4                        By

5                              MARK J. ROMEO
                          Attorneys for Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8631-01\ complaint                  4        COMPLAINT